UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

TERRANCE PEVIE, *Prisoner Identification No. 404-424*,

    Plaintiff,

v.

SECURITY CHIEF ORLANDO JOHNSON,
OFFICER ALEX AMEDU,
OFFICER DANIEL BISASE and
OFFICER UNKNOWN,[1]

    Defendants.

Civil Action No. TDC-14-2886

## MEMORANDUM OPINION

Plaintiff Terrance Pevie, then confined at Patuxent Institution in Jessup, Maryland, alleges that correctional officers assaulted him without provocation while they strip searched him, in violation of his constitutional rights. The officers assert that Pevie was the aggressor and that they used only enough physical force to subdue him. Pending before the Court are Pevie's Motion for Leave to File an Amended Complaint, Pevie's Motion to Appoint Counsel, and Defendants' Motion for Summary Judgment. Having reviewed the filings in this case, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion for Leave to File an Amended Complaint is DENIED, the Motion to Appoint Counsel is DENIED, and the Motion for Summary Judgment is GRANTED.

---

[1] Defendant "Officer Unknown" has not been identified or served with a summons and the Amended Complaint and so is not a party to this case.

## BACKGROUND

**I.   Procedural History**

On September 10, 2014, Pevie, currently an inmate at Jessup Correctional Institution in Jessup, Maryland, filed this action pursuant to 42 U.S.C. § 1983 ("§ 1983") alleging that he had been assaulted by correctional officers while he was incarcerated at Patuxent Institution ("Patuxent"). He amended his Complaint on October 27, 2014 to provide additional detail and to seek as relief money damages and the termination of the officers involved in the alleged assault. The Amended Complaint was brought against Chief Orlando Johnson, Officer Alex Amedu, and Officer Daniel Bisase (collectively, "Defendants"), as well as the Warden of Patuxent, Patricia Goins-Johnson. In the Amended Complaint, Pevie asserted that he had "pictures plus hospital documentation[]" that "prove[d]" his claims, and that he had two witnesses to support his allegations. Am. Compl. at 5, ECF No. 3; *see also* Compl. at 1 (asserting that he has documents that "prove" his claim of "correctional brutality"), ECF No. 1.[2] Neither the original Complaint nor the Amended Complaint was verified.

On May 15, 2015, Defendants filed a Motion to Dismiss or, in the Alternative, a Motion for Summary Judgment. They attached to that Motion declarations made under penalty of perjury by Defendants Johnson, Amedu, and Bisase denying Pevie's allegations, as well as other documentary evidence to corroborate their account. Upon the filing of that Motion, Pevie was provided by the Court with a letter stating that Pevie must file a timely written response or face dismissal of the case, as well as a copy of Federal Rule of Civil Procedure 56, laying out the evidentiary standards for a response to a motion for summary judgment. On July 6, 2015, Pevie

---

[2]   Citations are to the page numbers assigned by the Court's CM/ECF filing system.

filed a Response in Opposition to that Motion in which he asked the Court not to grant summary judgment but did not provide any evidence to counter the evidence submitted by Defendants.

In a November 25, 2015 Order, the Court granted the Motion to Dismiss as to Warden Goins-Johnson because there is no *respondeat superior* liability under § 1983, but denied it as to all other Defendants. The Court deferred decision on the Motion for Summary Judgment to give Pevie an opportunity to submit the evidence supporting his claims that he had referenced in his Amended Complaint. That Order further explained to Pevie that to prevail on the Motion for Summary Judgment, he would have to support his allegations with "one or more of the following forms of evidence: (1) his own sworn affidavit or declaration of the facts; (2) the sworn affidavits or declarations of other witnesses; and/or (3) documentary or physical evidence." Order at 4, ECF No. 22. The Court granted Pevie 21 days to provide such evidence and cautioned him that failure to do so might result in the granting of summary judgment in favor of Defendants.

In response to that Order, Pevie submitted a Motion for Leave to File an Amended Complaint, in which he asked permission to add evidence in support of his opposition to summary judgment. Pevie attached to the Motion the following exhibits: (1) paperwork from Howard County General Hospital indicating that Pevie was seen on February 22, 2013 for a nasal fracture and facial contusions; (2) a March 19, 2013 referral from the prison to an ophthalmologist for Pevie based on problems with his vision; (3) a photograph with the date stamp of October 21, 2012 that shows Pevie with apparent injuries to his face; (4) an anonymous letter from a self-identified Patuxent inmate that asserts that on February 22, 2013 Pevie was assaulted by Chief Johnson and Officer Amedu; (5) a second anonymous letter from a self-identified Patuxent inmate that asserts that on February 22, 2013 Pevie was assaulted by Chief

Johnson and Officer Amedu; (6) an administrative note from the prison infirmary indicating that on February 22, 2013 Pevie was sent in an ambulance to Howard County General Hospital for evaluation for a head injury after he complained of dizziness and was found bleeding from the nose and with swelling on the left part of his face; and (7) Pevie's Maryland Division of Correction Request for Administrative Review, an inmate grievance form that he filed in response to the events of February 22, 2013, which makes allegations consistent with those Pevie offers in his Amended Complaint. Pevie also later sent to the Court the blood-stained shirt he asserts he was wearing on the night of the alleged assault.

## II. The Alleged Assault

On February 22, 2013, Pevie was slated to be transferred from the E-1 area of the prison to the L-3 (segregation) area as a result of an altercation he had the previous day with a correctional officer. At about 6:15 p.m., Chief Johnson and Officer Amedu arrived to escort Pevie to L-3. According to the correctional officers, they discovered a cellular phone secreted in the waistband of Pevie's pants, an assertion Pevie denies.[3] Prison policy requires an inmate to be strip-searched before a move to segregation or when found with contraband. Chief Johnson and Officer Amedu therefore assert that, upon discovering the phone, they escorted Pevie to Room J-027, where the strip search could be conducted in privacy, as prison policy also requires. On their way to J-027, Chief Johnson instructed Officer Bisase to assist Officer Amedu in the strip search.

Pevie confirms that he was taken to J-027, but claims that he was taken there not for a routine strip search but for retaliatory purposes. Specifically, Pevie asserts that while he waited

---

[3] As a result of this discovery, Pevie was charged with violating prison rules against possessing a telecommunication device, using vulgar language, and possessing contraband. On March 13, 2013, he was found guilty of all three institutional violations.

4

in J-027, he heard Chief Johnson instruct Officers Amedu and Bisase to "teach [Pevie] a good lesson and to make sure it's done right," an allegation the officers deny. Am. Compl. at 4. Pevie thus contends that he was taken to J-027 because it is a secluded area of the prison "with no witnesses or cameras," not out of concern for his privacy. *Id.* at 3.

Both sides agree that after Pevie was placed in J-027, Officer Amedu entered the room alone and ordered Pevie, who was still handcuffed, to face the wall. Beyond that, their stories diverge. Pevie asserts that Officer Amedu, after removing the handcuffs, instructed Pevie to turn around and remove his shirt. According to Pevie, he began to comply with this instruction, but as he did so, Officer Amedu punched him, unprompted, in his nose. Pevie's nose began to bleed. Pevie asserts that, as he tended to his nose, Officer Amedu proceeded to hit him in the face several more times. In response, Pevie tried to shield his face. Pevie asserts that Amedu then placed him in a choke hold and wrestled him to the ground. Pevie further alleges that while Officer Amedu had him pinned—and while he struggled to get free—Officer Bisase and an unknown officer entered the room and began to kick him repeatedly.

Officer Amedu tells a very different story. He asserts that after he removed Pevie's handcuffs, Pevie slid his hand into his pocket. Officer Amedu asserts that he ordered Pevie to take his hand out of his pocket, but that Pevie instead turned suddenly around, faced Officer Amedu with his fist balled up, and then began swinging, hitting Officer Amedu in the head and upper body with his balled fist. Officer Amedu asserts that he defended himself by striking Pevie in the face with a closed fist, knocking Pevie to the ground. He then called for assistance. Officer Bisase asserts that he was getting a trash bag for Pevie to stand upon when he heard the call and came to assist Officer Amedu in subduing Pevie, but at no time did he kick or punch Pevie.

5

Both Pevie and Officer Amedu were injured in the encounter. Pevie sustained facial bruising and a broken nose, requiring emergency treatment at Howard County General Hospital. Officer Amedu sustained contusions to the hand, face, scalp, neck, chest wall, and abdominal wall. He returned to work the next day on restricted duty, with limitations on pushing, pulling, or lifting, before returning to regular duty on March 5, 2013. Pevie asserts that he continues to suffer from headaches, dizziness, and blackouts as a result of the assault.

## DISCUSSION

### I. Pevie's Motion to Amend Complaint

Pevie's Motion to Amend the Complaint does not actually express a wish to amend his complaint, but rather to submit evidence in support of his Response in Opposition to Defendants' Motion for Summary Judgment. The Court therefore denies the Motion to Amend, but accepts the evidence attached to the Motion and considers that evidence as part of Pevie's Response in Opposition to the Motion for Summary Judgment.

### II. Pevie's Motion for Appointment of Counsel

Pevie moves for appointment of counsel, asserting that unless counsel is appointed he will be "precluded from conducting interviews of witnesses" and will be hampered in his effort to respond to Defendants' arguments "due to the restricted law library access" in prison. Mot. App. Counsel at 2-3. He also asserts that prison authorities have "deliberately lost and stolen personal property" related to this litigation. *Id.* at 2. He concludes that without counsel, his case "will be stagnant." *Id.*

"The court may request an attorney to represent any person" proceeding *in forma pauperis* who is "unable to afford counsel." 28 U.S.C. § 1915(e)(1) (2012). In civil actions, however, the Court appoints counsel only in exceptional circumstances. *Cook v. Bounds*, 518

F.2d 779, 780 (4th Cir. 1975). In doing so, the Court considers "the type and complexity of the case," whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (internal quotation marks and citations omitted), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989). Exceptional circumstances include a litigant who "is barely able to read or write," *id.* at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008); *see also Altevogt v. Kirwan*, No. WDQ-11-1061, 2012 WL 135283, at *2 (D. Md. Jan. 13, 2012). Inherent in this analysis is that one's indigence is insufficient to establish exceptional circumstances. Nor do Pevie's other proffered reasons show exceptional circumstances that would warrant appointment of counsel. Pevie has been able to file multiple documents in this case, and has also filed six exhibits—including physical evidence from the night in question—to support his claims. His case has thus not become "stagnant," as he suggests. Furthermore, the issues in this case are not complicated, and Pevie has been able thus far to articulate the facts of his case and his legal claims without assistance. There are thus no exceptional circumstances in this case that warrant appointment of counsel. Pevie's Motion for Appointment of Counsel is denied.

### III. Defendants' Motion for Summary Judgment

Defendants Chief Johnson, Officer Amedu, and Officer Bisase seek summary judgment on several bases. First, they assert that they are entitled to qualified immunity. Second, they assert that Pevie's allegations are incredible as a matter of law. Third, they argue that they are entitled to judgment as a matter of law because the record evidence establishes that no excessive force was used on Pevie on the night of February 22, 2013. The Court addresses each argument in turn.

### A. Legal Standard

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court must believe the evidence of the nonmoving party, view the facts in the light most favorable to the nonmoving party, and draw all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A material fact is one that might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson*, 477 U.S. at 248) (internal quotation marks omitted). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists in the record for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49.

### B. Qualified Immunity

Government officials sued in their individual capacities, as these officers are here, may invoke the protection of qualified immunity to bar a claim for civil damages under § 1983. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity shields government officials from liability for conduct that "does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Id.* Here, Pevie claims that Defendants each participated, to differing degrees, in a chain of events that led to him being assaulted in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Such protection of the incarcerated from violence is a long-standing right of which Defendants should have been aware. *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (reiterating that the "unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment) (internal quotation marks and citations omitted). Defendants are therefore not entitled to qualified immunity based on the nature of the right at issue. Qualified immunity would be available only if Defendants' conduct did not constitute a violation of that Eighth Amendment right, an issue discussed further below.

### C. Evidence Incredible As a Matter of Law

Evidence is incredible as a matter of law "only when it is 'so unbelievable on its face that it defies physical laws.'" *United States v. Williams*, 49 Fed. App'x 420, 424 (4th Cir. 2002) (quoting *United States v. Lindell*, 881 F.3d 1313, 1322 (5th Cir. 1989)). This standard is plainly not met here. This basis for summary judgment is therefore rejected.

### D. Excessive Force

Pevie asserts that on the night of February 22, 2013, he was subjected to excessive force by Defendants in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). Courts must consider the need for application of force, the relationship between that need and the amount of force applied, the extent of the injury inflicted, the extent of the threat to the safety of staff and

9

inmates as reasonably perceived by prison officials, and any efforts made to temper the severity of the response. *Whitley* 475 U. S. at 321. The extent of injury incurred is one factor indicative of the amount of force used and of whether the force used was necessary in a particular situation, but if force is applied maliciously and excessively, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Wilkens v. Gaddy*, 559 U.S. 34, 37-38 (2010).

Here, the parties do not dispute that force was used against Pevie, and that Pevie needed medical treatment as a result of the injury he sustained during this incident. There, the agreement ends. Officer Amedu asserts that he used force only after Pevie assaulted him, and then only to the extent needed to subdue Pevie. Chief Johnson and Officer Bisase deny directing or participating in the use of force against Pevie. Their sworn accounts of the altercation and the events leading up to it are consistent with one another and are corroborated by additional evidence, such as photographs of the cellular phone allegedly recovered from Pevie and records describing the nature and extent of Pevie's injuries. Those documented injuries track with Officer Amedu's assertion that he administered a single strike to Pevie's face in an effort to subdue him. Officer Amedu's assertion that Pevie was the aggressor is also corroborated by medical records establishing that Officer Amedu received injuries not just to his hand, but to his face and chest as well. The relevant evidence submitted by Defendants thus supports the conclusion that the force used against Pevie was "applied in a good faith effort to maintain and restore discipline," and therefore that it was constitutionally permissible. *Hudson*, 503 U.S. at 6.

Pevie asserts that the force used was entirely gratuitous. He offers in support of his version of the events his own unverified allegations in his Amended Complaint, various medical records, two anonymous letters allegedly from fellow prisoners, his prison grievance form, and

his blood-stained shirt. Much of this evidence, even if credited, is immaterial to the central question of whether excessive force was used. The medical records and blood-stained shirt establish only that Pevie suffered a broken nose and facial contusions. But the fact that Pevie was injured in that manner is not in dispute. What is disputed is whether those injuries were the result of an unprovoked attack, or whether they were the result of an effort by prison staff to subdue Pevie after his attack on Officer Amedu. These pieces of evidence do not speak to that question, and therefore do not alter the summary judgment calculus.

Pevie's remaining evidence cannot be considered on summary judgment. The photograph he submits is dated October 21, 2012, so it appears to be entirely irrelevant to this case. Even if the photograph were from the evening of February 22, 2013, at best it would show, like the medical evidence and blood-stained shirt, that Pevie was injured, not whether his injuries were the result of excessive force. Nor can the Court credit the two anonymous letters from self-identified Patuxent inmates. It is undisputed—indeed, it is central to Pevie's contentions—that Pevie was alone in Room J-027, away from any witnesses or security cameras, when he was attacked by Defendants. There is no way that the authors of these letters could have witnessed the events at issue. Their assertions that Pevie was assaulted by Chief Johnson and Officer Amedu thus are not made on "personal knowledge," as required by Federal Rule of Civil Procedure 56, and they necessarily rely upon inadmissible hearsay, a problem exacerbated by the fact that the authors remain anonymous. *See* Fed. R. Evid. 801(c) (defining "hearsay" as a statement a person "does not make while testifying at the current trial or hearing" offered "to prove the truth of the matter asserted in the statement"). These letters therefore cannot be credited in evaluating the motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(4); *Md. Highways Contractors Ass'n v. State of Md.*, 933 F.2d 1246, 1251 (4th Cir. 1991) ("[H]earsay

evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment.").

Because Pevie's additional evidence either does not speak to the central issue in this case or cannot be considered on summary judgment, Pevie is left with only the allegations in his Amended Complaint and in his Maryland Division of Correction Request for Administrative Review. Because those allegations are unsworn and unverified, they are insufficient to counter Defendants' factual assertions supported by their declarations under penalty of perjury. When faced with a motion for summary judgment, "the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Rule 56 requires that a party's factual assertions must be supported by, as relevant here, "affidavits or declarations." Fed. R. Civ. P. 56(c)(1)(A). Pevie was first alerted to this requirement in the May 19, 2015 Notice he received from the Clerk regarding Defendants' filing of a Motion for Summary Judgment. That Notice included the language of Rule 56 as an attachment and specifically explained to Pevie that "affidavits" consist of "statements made under oath" and that declarations are "statements made subject to the penalty of perjury under 28 U.S.C. § 1746." Rule 12/56 Notice, ECF No. 18.

When Pevie failed to submit any affidavits or declarations with his Response to the Motion, the Court, out of an abundance of caution, alerted Pevie of this requirement for a second time. In its November 25, 2015 Order, the Court advised Pevie that he "must support his factual assertions with one or more of the following forms of evidence: (1) his own sworn affidavit or declaration of the facts; (2) the sworn affidavits or declarations of other witnesses; and/or (3) documentary or physical evidence." Order at 4. The Court then gave Pevie an additional opportunity to submit evidence. Despite these two notices, Pevie has failed to submit his

allegations through a sworn affidavit or declaration under penalty of perjury. Notably, because Pevie submitted a declaration under penalty of perjury pursuant to 28 U.S.C. § 1746 in support of his separate motion for appointment of counsel filed in July 2015, ECF No. 20, he clearly has the ability to draft, execute, and submit such a document to the Court.

Thus, Pevie has not provided competent evidence to dispute the factual assertions contained in the declarations submitted by Defendants. As noted, those declarations and additional evidence establish that Pevie was taken to Room J-027 to be searched because he was found with contraband, that Officer Amedu used force on Pevie only in response to Pevie's aggression, and that Officer Amedu used only enough force to subdue Pevie. Based on these uncontroverted facts, the Court must grant summary judgment to Defendants.

## CONCLUSION

For the foregoing reasons, Pevie's Motion to Amend Complaint is DENIED, Pevie's Motion for Appointment of Counsel is DENIED, and Defendants' Motion for Summary Judgment is GRANTED. A separate Order shall issue.

Date: February 10, 2016

THEODORE D. CHUANG
United States District Judge